# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-0207V**

| | |
|---|---|
| TRACY CHAPMAN,<br><br>Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: August 12, 2026 |

*Amy A. Senerth, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*Meghan Murphy, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT AND DECISION AWARDING DAMAGES[1]

On February 13, 2023, Tracy Chapman filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA"), as defined in the Vaccine Injury Table, after receiving an influenza ("flu") vaccine on October 9, 2021. Petition at 1, ¶¶ 1, 21.

For the reasons set forth below, and after briefing by the parties, I find that Petitioner is entitled to compensation, and I award damages in the amount of

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

**$108,386.42, representing $107,000.00 for actual pain and suffering, plus $1,386.42 for past unreimbursed expenses.**

## I. Factual Findings and Ruling on Entitlement

### A. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must demonstrate, by a preponderance of evidence, all matters required under Section 11(c)(1), including the factual circumstances surrounding his claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section 13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Hum. Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). Contemporaneous medical records are presumed to be accurate. *See Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993). To overcome the presumptive accuracy of medical records testimony, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)).

In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(XIV)(B). The criteria establishing a SIRVA under the accompanying Qualifications and Aids to Interpretation (“QAI”) are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient’s symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10) (2017).

### B. Factual Finding Regarding QAI Criteria for Table SIRVA

The only SIRVA Table requirement that Respondent contests is the second criterion - whether Petitioner experienced pain onset within 48 hours of vaccination. Rule 4(c) Report, filed Sept. 11, 2024, at 6-7; *see* 42 C.F.R. § 100.3(a)(XIV)(B) & (c)(10)(ii) (requiring first symptom and pain onset specifically within 48 hours of vaccination). To support his position, Respondent emphasizes Petitioner’s two-month treatment delay and

failure to mention the flu vaccine, while also denying any traumatic injury at her initial primary care provider ("PCP") appointment on December 5, 2021. Arguing that Petitioner failed to "report immediate onset of shoulder pain with the received vaccine until almost three months after the fact" (during her orthopedic appointment on January 5, 2022), he insists this delay "cuts against any assertion that her pain was both immediate and significant with the 48 hours after vaccination." *Id.* at 6-7. Respondent maintains that "when Petitioner suffered from acute injuries in the past, she sought treatment sooner," citing specific examples to illustrate this assertion. *Id.* at 7.

In response, Petitioner notes the presence of "multiple, consistent subsequent reports tying onset to the date of vaccination (October 9, 2021)." Petitioner's Motion for a Ruling on the Record ("Brief"), filed Aug. 22, 2025, at 7, ECF No. 26. She contends that the "first post-vaccination medical record does not contradict immediate post-vaccination pain; rather, it reflects a limited intake note by a registered nurse, not a detail causation history." *Id.* In a supplemental declaration[4] filed five days later, Petitioner insists that she "explained clearly: the pain began immediately after [her] flu shot." Ex. 8 at ¶ 6.

Petitioner also seeks to refute Respondent's claim that her "prior care-seeking behavior for unrelated injuries" undercuts her assertion of an immediate and vaccine-related onset. Brief at 8. She argues that "[d]ifferences in how a person responds to a post-vaccination shoulder injury that she expected might improve versus back pain, are not probative of onset." *Id.*

In their responsive briefing, the parties reiterate the arguments set forth in their initial filings. Respondent's Response to Brief ("Opp."), filed Oct. 10, 2025, ECF No. 28; Petitioner's Reply to Opp. ("Reply"), filed Nov. 17, 2025, ECF No. 29. Noting that her first report of left shoulder pain was made at a PCP appointment for weight management, Petitioner disputes Respondent's view that her denial of trauma "indicate[s] a more insidious onset and contradicts her claim of a vaccine-related injury." Reply at 3. Rather, she insists that it "merely distinguishes SIRVA from unrelated accidents; it does not undermine immediate post-injection pain." *Id.*

A review of the record in this case establishes the existence of preponderant evidence for the required pain onset. Petitioner's failure to seek treatment until 57 days post-vaccination is not the strong evidence undermining onset that Respondent contends. As I have stated on numerous occasions, individuals suffering from vaccine-related symptoms will often delay seeking treatment for at least a few weeks, believing that their symptoms will resolve on their own. *Matthews v. Sec'y of Health & Hum. Servs.,* No. 22-1396V, 2024 WL 3026843, at *6 (Fed. Cl. Spec. Mstr. May 15, 2024). Additionally,

[4] Petitioner's declaration is signed under penalty of perjury as required by 28 U.S.C.A. § 1746. Ex. 8.

Petitioner was not seen during this period for any other illness or medical condition. Such intervening treatment evidence can in many cases either corroborate a petitioner's claim or undermine it – but it is totally absent here.

Similarly, the lack of any reference to the October 9, 2021 flu vaccine in the medical record from Petitioner's PCP visit on December 3, 2021, merits little evidentiary weight considering the cursory nature of the PCP's medical records – for all are without the usual medical history narrative. *See generally* Ex. 2. Regarding the complaints addressed at this appointment, the record states only the following:

> HPI
>
> refill phentermine/topamax for weight loss, denies adverse s/e
>
> ROS
>
> **Additionally reports:**
> **doing well with phentermine/topamax, no neg s/e, not exercising**
> **reports left shoulder pain-denies trauma**

Ex. 2 at 22. Had the record contained a comprehensive history, describing a different cause or pain onset than Petitioner asserts, it would constitute stronger contradictory evidence. Instead, other than the denial of trauma, it is silent on the issues of symptom onset and cause. And that denial of trauma is not the same as the rejection of a vaccine-related injury. Medical records in SIRVA cases often contain this same denial while simultaneously describing pain attributed to vaccination, supporting Petitioner's argument – that the term "trauma" is meant to reference an accident or something more violently disruptive.

Furthermore, the medical records from later appointments clearly show Petitioner consistently attributed her left shoulder pain to the flu vaccine she received, and provided the vaccination date (October 9, 2021) when describing the start of her pain. At her initial orthopedic visit on January 5, 2022, she "state[d] her pain ha[d] been present since 10/9/21 without fall or injury." Ex. 3 at 43. And at her initial physical therapy ("PT") evaluation on January 13, 2022, she "state[d] that the initial onset occurred on 10/09/2021 when she was experiencing increased pain after getting a flu shot." Ex. 4 at 5. Although these statements were provided by Petitioner, they are set forth in contemporaneous records and were provided to health professionals to facilitate diagnosis and treatment. *See Cucuras*, 993 F.2d at 1528. Thus, I find there is preponderant evidence to show Petitioner's pain began within 48 hours of vaccination.

Respondent has raised no other entitlement objection, and the record contains sufficient evidence showing Petitioner has satisfied the other QAI criteria. *See* 42 C.F.R. § 100.3(c)(10)(i), (iii)-(iv). There is no evidence of prior left shoulder symptoms or a current condition that constitutes a viable alternative cause. *See, generally,* Ex. 2 (PCP records). Additionally, Petitioner's pain and decreased range of motion ("ROM") were limited to her left shoulder. *E.g.,* Ex. 4 at 5-8 (initial PT evaluation). All elements of a Table SIRVA claim have been preponderantly established.

### C. Other Requirements for Entitlement

Because Petitioner has satisfied the requirements of a Table SIRVA, she need not prove causation. Section 11(c)(1)(C). However, she must satisfy the other requirements of Section 11(c) regarding the vaccination received, the duration and severity of her injury, and the lack of other award or settlement. Section 11(c)(A), (B), and (D). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence which fulfills these additional requirements.

## II. Compensation to be Awarded

### A. Legal Standards for Pain and Suffering Awards

In another recent decision, I discussed at length the legal standard to be considered in determining damages and prior SIRVA compensation within SPU. I fully adopt and hereby incorporate my prior discussion in Sections I and II of *Pello v. Sec'y of Health & Hum. Servs.*, No. 24-1896V, 2026 WL 2211341, at *1-3 (Fed. Cl. Spec. Mstr. July 14, 2026).

In sum, compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00." Section 15(a)(4). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Hum. Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering.[5]

[5] *I.D. v. Sec'y of Health & Hum. Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) (quoting *McAllister v. Sec'y of Health & Hum. Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

### B. Parties Arguments

The parties agree Petitioner should be awarded $1,386.42 for past unreimbursed expenses, comprised of $1,303.70 for out-of-pocket costs and $82.72 in mileage costs. Opp. at 13; Reply at 6. Thus, the only area of disagreement is the amount of compensation which should be awarded for Petitioner's pain and suffering.

Characterizing her left shoulder injury as "severe and persistent, marked by high pain levels, limited range of motion, and functional limitations that ultimately required two ultra-sound guided injections, physical therapy, orthopedic visits, and arthroscopic surgery" (Brief at 10), Petitioner seeks $125,000.00 for her pain and suffering (*id.* at 1, 14). She favorably compares the facts and circumstances in her case to those experienced by the petitioners in *Rector* and *Wilson-Blount*[6] - decisions in surgical cases featuring awards of $120,000.00. Brief at 11-13.

Insisting that "the record evidence demonstrates that [P]etitioner's assessment of damages is inconsistent with her actual level of pain and suffering, Respondents counters that "[t]he facts of this case do not support a pain and suffering award of $125,000.00, as [P]etitioner requests." Opp. at 7-8. Instead, he proposes an award substantially lower than the $110,000.00 awarded in the comparable case he cites – *McCabe.*[7] Opp. at 12-13.

Respondent characterizes Petitioner's injury as moderate - involving mild pain levels, active treatment for nine months, and an overall duration of eleven months. Opp. at 10. To support his claim that Petitioner's pain was not severe, he emphasizes her two-month treatment delay, reports during PT that her pain was well-controlled and she was engaging in normal activity, and failure to pursue PT beyond September 2022. *Id*. Respondent also insists that "the March 2022 MRI of [P]etitioner's shoulder revealed pathology that could not have been caused by the vaccine administration, such as a SLAP[8] tear and osteoarthritis . . . [and] her surgery included a number of procedures related to conditions that could not be caused by vaccine administration." *Id.*

Distinguishing the comparable cases proposed by Petitioner, Respondent contends they involved more immediate initial complaints and greater pain levels. Opp.

---

[6] *Rector v. Sec'y of Health & Hum. Servs.,* No. 17-1767V, 2020 WL 4692449 (Fed. Cl. Spec. Mstr. Ju13, 2020); *Wilson-Blount v. Sec'y of Health & Hum. Servs.,* No. 21-1400V, 2023 WL 8190499 (Fed. Cl. Spec. Mstr. Oct. 25, 2023).

[7] *McCabe v. Sec'y of Health & Hum. Servs.,* No. 19-1916V, 2021 WL 6755494 (Fed. Cl. Spec. Mstr. Dec. 29, 2021).

[8] SLAP stands for Superior Labrum Anterior Posterior. MEDICAL ABBREVIATIONS at 552 (16th ed. 2020).

at 10-12. He also argues that the cases "are not comparable to the instant case because, unlike this case, entitlement to compensation had already been determined." Opp. at 10.

Regarding Petitioner's argument - that her surgery was more extensive than the procedure undergone by the *Rector* petitioner - Respondent reiterates his assertion that "many of those pathologies listed by [P]etitioner (such as a labral tear) *could not be caused by vaccine administration.*" *Id.* at 11 (emphasis in the original). Although he acknowledges the similar treatment required for the *Wilson-Blount* petitioner, Respondent emphasizes the longer treatment duration in that case. *Id.*

In reaction, Petitioner insists that Respondent "mischaracterizes the record and ignores the documented evidence of functional loss, surgical complexity, and prolonged recovery." Reply at 3. She cites multiple examples when Petitioner reported greater pain levels and limited ROM and notes that she required a scalene pain block, as well as general anesthesia, during surgery. *Id.* at 3-4.

Depicting Respondent's argument "that damages should be discounted because some of the pathology identified during surgery (such as a SLAP tear) was 'unrelated' to vaccine administration" as "misplaced" (Reply at 4), Petitioner insists "[t]his Court has explicitly rejected that reasoning, recognizing that incidental findings do not diminish the pain and suffering caused by the vaccine-related injury" (*id.* at 4-5). As an example, she cites language from *McClelland v. Sec'y of Health & Hum. Servs.,* No. 24-0605V, 2025 WL 1542018 (Fed. Cl. Spec. Mstr. Apr. 30, 2025). Reply at 5.

Characterizing the *McCabe* petitioner's pain levels as "mostly mild to moderate" and his recovery post-surgery as "strong" and "excellent," Petitioner insists that "the evidence therefore supports a higher pain-and-suffering award than in *McCabe.*" *Id.* at 5-6.

### C. General Arguments by the Parties

As a preliminary matter, the parties' general arguments related to the calculation of pain and suffering awards are not persuasive. I will address these positions before discussing the specific facts of this case.

Respondent argues that I should discount the pain and suffering award in this case because entitlement had not been determined at the time of damages briefing. Response at 10-11. However, I instructed the parties to provide briefing related to the question of damages *in the event* that I reached an entitlement determination favorable to Petitioner. The timing of my entitlement determination, and the fact it is made over Respondent's objections, does not mean that the damages to be awarded are discounted. While the

parties are always free to settle cases before entitlement is resolved (and in that context discounts for risk of success may be reasonably taken into account), damages awarded after Program entitlement *rulings* – whether in conceded cases, or matters where a special master makes actual determinations, as here – are not properly reduced for such reasons.

For her part, Petitioner contends preexisting, albeit asymptomatic, shoulder comorbidities or pathologies not directly associated with vaccination (such as a SLAP tear) have no bearing when determining the appropriate pain and suffering award. Reply at 4-5. But she bases that argument on an overly broad interpretation of my holding in *McClelland.* In that case, I rejected Respondent's argument that Ms. McClelland was not entitled to the usual six-figure amount awarded in surgical cases merely because her surgery included the "repair of 'unrelated' pathology such as rotator cuff and SLAP tears." *McClelland* 2025 WL 1542018, at *5. But I did not find the existence of any unrelated pathology should be completely *ignored.*

In this case, such evidence is relevant. I have previously mentioned conditions such as a SLAP tear as unrelated (at least directly) to a SIRVA, and something to be factored in when calculating pain and suffering. *See,* e.g., *Wunsch v. Sec'y of Health & Hum. Servs.,* No. 22-0689V, 2026 WL 2322099, at *3-4 (Fed. Cl. Spec. Mstr. July 2, 2026); *Brown v. Sec'y of Health & Hum. Servs.,* No. 20-1287V, 2024 WL 5410122, at *5 (Fed. Cl. Spec. Mstr. Dec. 18, 2024). Ultimately, different cases will require different balancing of such factors.

### D. Appropriate Compensation for Pain and Suffering

In this case, awareness of the injury is not disputed. The record reflects that at all times Petitioner was a competent adult with no impairments that would impact his awareness of her injury. Therefore, I analyze principally the severity and duration of Petitioner's injury. In determining appropriate compensation for pain and suffering, I have carefully reviewed and taken into account the complete record in this case, including but not limited to: Petitioner's medical records, filings, and all assertions made by the parties in written documents. I have also considered prior awards for pain and suffering in both SPU and non-SPU SIRVA cases, and relied upon my experience adjudicating these cases. However, my determination is ultimately based upon the specific circumstances of this case.

The medical records show that Petitioner (52 years old and an auditor at Deutsche Bank)[9] suffered a mild to moderate SIRVA, requiring arthroscopic surgery[10] but which had substantially resolved within nine months.[11] Following a two-month gap in treatment, Petitioner attended additional PT sessions on September 14 and 16, 2022, approximately eleven months post-vaccination, but her reported symptoms were extremely mild.[12]

Throughout her injury, Petitioner reported current pain at a level of three to four out of ten. *See,* e.g., Ex. 3 at 35. Although several entries (from early January 2022) describe a range which includes a much greater maximum amount (up to nine and ten), the record as a whole shows this more severe pain occurred only occasionally.[13] And Petitioner's failure to pursue treatment until two months post-vaccination at an already scheduled PCP visit, further signifies that her pain level was not significant.

Additionally, Petitioner suffered from ongoing conditions constituting potential unrelated sources of pain, specifically lower back pain and joint arthralgias - bilateral hip

---

[9] Petitioner provided this information on her intake form for her initial orthopedic appointment. Ex. 3 at 53.

[10] After Petitioner obtained only some relief from a steroid injection administered on January 5, 2022, her orthopedist instructed her to continue PT and ordered an MRI. Ex. 3 at 38-39; *see id.* at 43-44 (steroid injection); Ex. 4 at 38 (discussing the amount of relief provided by the steroid injection). The March 3, 2022 MRI revealed the following findings:

1. Mild supraspinatus tendinosis with moderate grade partial thickness articular surface tear of the posterior third of the supraspinatus tendon.
2. SLAP tear.
3. Small to moderate glenohumeral joint effusion.
4. Small amount of fluid in the subacromial subdeltoid bursa which may indicate mild bursitis.

(Ex. 3 at 73), and the orthopedist recommended surgery (*id.* at 26). Performed on April 22, 2022, the surgery involved multiple procedures to include repair of the supraspinatus tendon and SLAP tears, subacromial decompression, major debridement, synovectomy, glenoid bone removal, glenoid bone removal, manipulation under anesthesia, and large joint injection. Ex. 5 at 9.

[11] By a post-surgical visit to the orthopedist on July 18, 2022, approximately three months post-surgery and nine months post-vaccination, Petitioner reported "currently attending physical therapy with great improvement in strength and range of motion," well-controlled pain, and a return to normal daily activities. Ex. 3 at 11.

[12] Petitioner reported feeling "weak and tight" at both these September sessions. Ex. 4 at 125, 127. Additionally, she was likely preparing her vaccine claim by this time. Petitioner's counsel submitted at least one records request three weeks later on October 8, 2022) shows Petitioner likely engaged counsel during this time. *See* Ex. 3 at 1.

[13] Although Petitioner reported a pain level of ten on the intake form at her initial orthopedic visit on January 5, 2022, she stated that her current pain was three when speaking to the orthopedist. *Compare* Ex. 3 at 46 *with id.* at 43. At her initial PT session on January 13, 2022, Petitioner described her pain as three to nine, adding that it decreased with rest and increased with movement. Ex. 4 at 5. By her second orthopedic visit on February 7, 2022, Petitioner reported a more moderate pain level – four out of ten, without any mention of a more severe maximum level. Ex. 3 at 38.

and left knee. Ex. 2 at 23-104. And she was diagnosed with diabetes and arthritis. *Id.* As late as December 2020, only ten months prior to vaccination, Petitioner was prescribed Tramadol[14] for her lower back pain. *Id.* at 57-58.

Still, Petitioner often described her pain as constant. And she also experienced documented limitations in her ROM which improved significantly, albeit slowly, during post-surgery PT. Furthermore, this case involved arthroscopic surgery, which I have consistently determined warrants a greater pain and suffering award.[15]

The cases proposed by Petitioner provide some guidance, but they involved more severe pain, as shown by the accelerated pursuit of treatment in those cases. *Rector,* 2020 WL 4692449, at *2-3; *Wilson-Blount,* 2023 WL 8190499, at *10. Thus, the pain and suffering award in this case should be less, not greater, than $120,000.00 as awarded in those cases. Nor, however, should Petitioner's award be significantly less than the $110,000.00 awarded in *McCabe.* Although the *McCabe* petitioner's overall duration was more than twice that of the Petitioner, his reported pain severity was less. *McCabe,* 2021 WL 6755494, at *7-10. On occasion, the *McCabe* petitioner reported no current pain. *Id.* at *8.

Instead, I find *Timberlake*[16] – in which $107,000.00 was awarded - to present the best comparable case. Both petitioners suffered SIRVAs with similar severity and duration. *Timberlake,* 2025 WL 721730, at *4-5. The *Timberlake* petitioner also delayed seeking treatment for approximately two months, underwent a successful arthroscopic surgery less than seven months post-vaccination, and suffered other unrelated co-morbidities. *Id.* Thus, I find that Petitioner should receive a similar past pain and suffering award.

---

[14] Tramadol hydrochloride is "an opioid analgesic used for the treatment of moderate to moderately severe pain following surgical procedures and oral surgery; administered surgically." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 1950, 547 (32th ed. 2012).

[15] In *McClelland,* I noted that

> I also have routinely found that it is generally appropriate to start with a six-figure "baseline" for past pain and suffering for a SIRVA surgery case. Both medical providers' *recommendation* of surgery, and an individual's *acceptance* of that intervention (and its attendant risks), is one relevant measure of an injury's severity. I am not inclined to diverge from that baseline absent special circumstances and persuasive caselaw that supports a lower award.

*McClelland,* 2025 WL 1542018, at 4.

[16] *Timberlake v. Sec'y of Health & Hum. Servs.,* No. 20-1905V, 2025 WL 721730 (Fed. Cl. Spec. Mstr. Feb. 19, 2025).

## Conclusion

For all the reasons discussed above, and based on consideration of the entire record, **I find that Petitioner's left shoulder injury meets the definition for a Table SIRVA. Thus, causation is presumed, and Petitioner is entitled to compensation in this case. Furthermore, I find that $107,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual pain and suffering.**[17] **I also find that Petitioner is entitled to $1,386.42 in actual unreimbursable expenses.**

**I therefore award Petitioner a lump sum payment of $108,386.42, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

This amount represents compensation for all damages that would be available under Section 15(a). The Clerk of the Court is directed to enter judgment in accordance with this Decision.[18]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[17] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[18] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.